IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

C. I. O'Neill, as the Personal Representative of the Estate of John P. O'Neill, Sr., deceased, and on behalf of all survivors and all legally entitled beneficiaries and family members of John P. O'Neill, Sr.

C. I. O'Neill, individually, as surviving spouse of John P. O'Neill, Sr.

C. I. O'Neill as the Personal Representative of the Estate of D. A. O'Neill, the late parent of John P. O'Neill, Sr.

J. P. O'Neill, Jr., individually, as surviving child of John P. O'Neill, Sr.

C. O'Neill, individually, as surviving child of John P. O'Neill, Sr.

                               Plaintiffs,

  On Behalf of Themselves and
  All Others Similarly Situated,

                        vs.

Republic of the Sudan,
    c/o Embassy of the Republic of the Sudan
    2210 Massachusetts Avenue, N.W.
    Washington, D.C. 20008

Agencies and Instrumentalities
of the Republic of the Sudan
    Ministry of the Interior
    Ministry of Defense
    Security of the Revolution
    Military Intelligence
    State Security
    Popular Defense Force
    Revolutionary Security Services

                      Defendants.

---

**SUPPLEMENTAL
CLASS ACTION
COMPLAINT**

**CASE NUMBER:**
_____ **(GBD) (SN)**

**Jury Trial Demanded**

## PURPOSE

1.      The purpose of this Supplemental Class Action Complaint is to supplement, but not supplant or supersede, the First Consolidated Complaint, 04-cv-1922, 03-MDL-1570, ECF No. 1569, filed September 30, 2005, as to the Republic of the Sudan and its agencies and instrumentalities solely in order to add new causes of action.

## INTRODUCTION

2.      On September 11, 2001, 2,977 individuals were murdered when (19) nineteen terrorists perpetrated an attack on the United States that was unprecedented in history.  The nineteen terrorists (hereinafter referred to as the "al Qaeda hijackers" or the "hijackers") were members of a terrorist network known as "al Qaeda." In a coordinated attack, they hijacked four (4) passenger jet airliners, causing two jets to crash into the World Trade Center Towers in New York, and a third to crash into the Pentagon Building in Arlington County, Virginia.  The fourth airliner crashed into a field near the town of Shanksville, Pennsylvania, after innocent passengers challenged the hijackers and prevented them from reaching their apparent destination in Washington, D.C. ("September 11th Attacks").

3.      The attacks of September 11, 2001, were not isolated incidents, but rather a coordinated effort by the al Qaeda terrorist organization, planned for years by an extensive network of Islamic militants with the support, aid and assistance of banks, governments, and individuals.  The then leader of al Qaeda, Osama bin Laden, admitted his responsibility for planning and carrying out the September 11th Attacks.  The al Qaeda organization, with the aid and assistance of various individuals, organizations and governments, sponsored, trained, funded, and supported the hijackers.

4.      Plaintiffs, through their undersigned attorneys, do hereby bring this Complaint seeking damages as descendants, heirs and survivors, and as personal representatives of those

who were killed as a result of the September 11th Attacks.  Plaintiffs demand judgment against the Republic of the Sudan and its agencies and instrumentalities (referred to collectively herein as the "Named Defendants"), and, through their undersigned attorneys, do hereby bring this Complaint seeking damages arising out of those terrorist attacks, and state as follows:

## THE PARTIES

### *Plaintiffs*

5.      Plaintiff J. P. O'Neill, Jr., is a United States citizen and a resident of the State of Maryland.  He is the surviving son of John P. O'Neill, Sr., who was killed in the terrorist attack on the World Trade Center Towers in New York City on September 11, 2001.

6.      Plaintiff C. I. O'Neill is a United States citizen and a resident of the State of New Jersey.  She is the surviving widow of John P. O'Neill, Sr., who was killed in the terrorist attack on the World Trade Center Towers in New York City on September 11, 2001.

7.      Plaintiff C. I. O'Neill is the personal representative of D. A. O'Neill, who was a United States citizen and a resident of the State of New Jersey.  She was the surviving mother of John P. O'Neill, Sr., who was killed in the terrorist attack on the World Trade Center Towers in New York City on September 11, 2001.

8.      Plaintiff C. O'Neill is a United States citizen and a resident of the State of Pennsylvania.  She is the surviving daughter of John P. O'Neill, Sr., who was killed in the terrorist attack on the World Trade Center Towers in New York City on September 11, 2001.

9.      Plaintiffs' decedent, John P. O'Neill, Sr., was a United States citizen and a resident of the State of New Jersey.  He was killed in the terrorist attack on the World Trade Center Towers in New York City on September 11, 2001.

10.      Plaintiff the Estate of John P. O'Neill, Sr., is the legal entity created to recover damages on behalf of John P. O'Neill, Sr., deceased, and on behalf of all survivors and all legally

2

entitled beneficiaries and family members of  John P. O'Neill, Sr., arising from the September 11, 2001 terrorist attack on the World Trade Center.  Plaintiffs J. P. O'Neill, Jr., and C. I. O'Neill are co-executors of the Estate of John P. O'Neill Sr., deceased.

### *The Class and Class Representatives*

11.     The Plaintiffs named above (the "Class Representatives"), pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and all similarly situated persons and entities, as defined as follows:

> The following persons shall be members of the Class: (1) all spouses, children, parents, or siblings of any individual who died at the World Trade Center in New York, NY, the Pentagon Building in Arlington County, Virginia, or in the airliner crash in Shanksville, Pennsylvania, as the result of terrorist attacks on September 11, 2001; and (2) all legal representatives (including executors, estate administrators and trustees) entitled to bring legal action on behalf of any individual who died as the result of terrorist attacks on September 11, 2001; but excluding (3) all individuals, and all spouses, children, parents, siblings, and legal representatives of individuals identified by the Attorney General of the United States or otherwise shown to have perpetrated, aided and abetted, conspired in regard to, or otherwise supported the terrorist attacks of September 11, 2001.

12.     All members of the Class are hereinafter referred to collectively as the "Class". All persons who perished as a result of the September 11 terrorist attacks are referred to collectively as the "Decedents."

### **DEFENDANTS**

### *The Republic of the Sudan*

13.     Defendant the Republic of the Sudan ("the Sudan") is a foreign state within the meaning of 28 U.S.C. § 1391(f).

14.     Defendant the Sudan maintains an embassy within the United States at 2210 Massachusetts Avenue, N.W., Washington, DC 20008.

3

15.     Defendant the Republic of Sudan has, since 1993, been designated a State Sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. § 2405 (j)) and section 602(a) of the Foreign Assistance Act of 1961 (22 U.S.C. § 2371(b)) and 28 U.S.C. § 2333.

16.     The following Defendants were among the officials, officers, agents, employees, agencies and instrumentalities of the Sudan through which it caused, supported, and contributed to the terrorist acts that resulted in the death of the Decedents: the Sudanese Ministry of the Interior; the Sudanese Ministry of Defense, the Security of the Revolution; Sudanese Military Intelligence; Sudanese State Security; the Popular Defense Force; the Revolutionary Security Services.

17.     Plaintiffs move for judgment against Defendants, jointly and severally.

## JURISDICTION AND VENUE

18.     Venue in this district is proper pursuant to 28 U.S.C. §§ 1391(b)(2), 1391(d), and 1391(f)(1), as a substantial part of the events giving rise to the claims asserted herein occurred in this district. Venue is also proper in this district pursuant to 18 U.S.C. § 2334(a).

19.     Jurisdiction arises pursuant to 28 U.S.C. §§ 1330(a), (b), 1331 and 1332(a)(2). Jurisdiction also arises based on the Named Defendants' violations of 28 U.S.C. §§ 1605(a)(5), 1605A, 1605B (the Foreign Sovereign Immunities Act), and 18 U.S.C. § 2333.

20.     As herein alleged, actions for wrongful death and related torts perpetrated by the Republic of the Sudan through its agencies and instrumentalities, and through its officials, employees and agents, fall within the exceptions to jurisdictional immunity under 28 U.S.C. § 1605(a)(5), § 1605A and § 1605B.

4

## COMMON FACTUAL ALLEGATIONS
## RELEVANT TO ALL COUNTS OF THE COMPLAINT

21.     On the morning of September 11, 2001, al Qaeda hijackers Marwan al-Shehhi, Fayez Ahmed a/k/a/ Bamihammad Fayez, Ahmed al-Ghamdi, Hazma al- Ghamdi, and Molahd al-Shehri hijacked United Airlines Flight 175, bound from Boston to Los Angeles, and crashed it into the South Tower (Tower Two) of the World Trade Center in New York City.

22.     On the morning of September 11, 2001, al Qaeda hijackers Mohammed Atta, Abdul Alomari, Wail al-Shehri, Waleed al-Shehri, and Satam al-Suqami hijacked American Airlines Flight 11, bound from Boston to Los Angeles, and crashed it into the North Tower (Tower One) of the World Trade Center in New York.

23.     On the morning of September 11, 2001, al Qaeda hijackers Khalid al-Midhar, 0Nawalf al-Hazmi, Salem al-Hazmi, Hani Hanjour, and Majed Moqued hijacked American Airlines Flight 77, bound from Dulles Airport in Sterling, Virginia, to Los Angeles, California, and crashed it into the Pentagon in Arlington, Virginia.

24.     On September 11, 2001, al Qaeda hijackers Zihad Jarrah, Ahmed Al-Haznawi, Saeed Al-Ghamdi, and Ahmed al-Nami hijacked United Airlines Flight 93, bound from Newark, New Jersey to San Francisco, California, with the intention of crashing that plane into either the United States Capitol building or the White House in Washington, D.C.  In a heroic act of defiance and courage, the passengers of Flight 93 overtook the hijackers, and the plane crashed near Shanksville, Pennsylvania, prior to reaching its target in Washington, D.C.

25.     All nineteen (19) hijackers were members of Osama bin Laden's al Qaeda network.  All of the hijackers received sponsorship, funding, training, and other support through the al Qaeda network.

5

26.     The September 11th Attacks resulted in the tragic loss of thousands of lives, personal injuries to countless other persons, and property damage on a catastrophic scale, including the complete destruction of the World Trade Center Complex.  The Plaintiffs were killed as a direct and proximate cause of the acts of Osama bin Laden and al Qaeda, who have admitted responsibility for the September 11th Attacks, as well as the acts of co-conspirators and sponsors, including the acts of the Named Defendants herein.

### *The Republic of the Sudan and its Agencies and Instrumentalities*

27.     Defendant the Sudan has supported, encouraged, sponsored, aided and abetted and conspired with a variety of groups that use terror to pursue their goals.  The Sudan has long provided financing, training, safe-haven, paramilitary training, indoctrination, money, travel documentation, safe passage, and refuge in the Sudan, as well as weapons, for terrorist groups, including al Qaeda and Osama bin Laden.

28.     Defendant the Sudanese Ministry of the Interior, as the agency responsible for governing the Sudan's internal affairs, has participated in providing such material support and resources to al Qaeda.

29.     Defendant the Sudanese Ministry of Defense, as the Sudan's military apparatus, has participated in providing such material support and resources to al Qaeda.

30.     Defendants the Sudanese Ministry of Defense, the Security of the Revolution, Sudanese Military Intelligence, Sudanese State Security, the Popular Defense Force, and the Revolutionary Security Services have participated in providing such material support and resources to al Qaeda.

31.     Defendant the Sudan openly harbored Osama bin Laden and many top al Qaeda lieutenants between 1991 and 1996.  During that time, the Sudanese government permitted Osama bin Laden to establish al Qaeda training camps in the Sudan, set up front companies in

6

the Sudan to move assets and generate new revenues, and to use the cloak of the Sudan's state sovereignty to shield al Qaeda's operations.

32.     In 1996, the Sudanese government permitted Osama bin Laden to move to Afghanistan, where he was welcomed as an honored guest of the ruling Taliban government, rather than surrendering him to international authorities for prosecution.

33.     Defendant the Sudan continues to harbor members of the al Qaeda terrorist network, as well as members of affiliated FTOs, and has recently permitted al Qaeda and other associated terrorist organizations to re-establish training camps within the Sudan, and to otherwise use the Sudan as a base to organize their operations and support their coconspirators and associates elsewhere.

34.     In addition to its extensive direct support of al Qaeda, Defendant the Sudan has long provided material support and resources to FTOs Egyptian Islamic Jihad and Hezbollah. By virtue of its merger with Egyptian Islamic Jahad, and affiliation with Hazbollah, al Qaeda has materially benefited from Sudan's sponsorship of those FTOs.

35.     Defendant the Sudan provides material support and resources to al Qaeda, a politico-paramilitary terrorist organization established and headed by Osama bin Laden.

36.     Defendant the Sudan funds, supports, sponsors, aids, abets, and provides a safe haven for the al Qaeda terrorist organization and is therefore a state sponsor of al Qaeda within the meaning of 28 U.S.C. §§1605A and 1605.

37.     Defendant the Sudan maintained close ties with the Republic of Iraq as early as the first Persian Gulf War in 1990, at which time both countries were supporting al Qaeda and Osama bin Laden.

38.     Defendant the Sudan permitted Iraq to establish a major Iraqi intelligence operation in the Sudan through Iraq's ambassador to Khartoum, Ab al Samad al-Ta'ish.  By allowing Iraqi intelligence to operate within its borders, the Sudan facilitated Iraq's smuggling of weapons and provision of other material support to al Qaeda and Osama bin Laden.

39.     Defendant the Sudan permitted Osama bin Laden to establish his headquarters and base thousands of al Qaeda terrorists within its borders in 1991.  From his headquarters in the Sudan, Osama bin Laden developed contacts with individuals, government entities, and private corporations, named herein, who aided, abetted and materially sponsored the terrorist activities of al Qaeda.

40.     In or about 1991, Sudan through Hassan al-Turabi, leader of the Sudan's ruling National Islamic Front party (or "NIF"), allowed the terrorist Osama bin Laden and his al Qaeda party entrance into Sudan.  During this time period, Sudan abandoned visa requirements for Arabs and actively encouraged Islamic militants to live within its borders.  By the end of 1991, there were between 1,000 and 2,000 members of al Qaeda in Sudan.  Following al Qaeda's move to the Sudan in or about 1991, Osama bin Laden established a headquarters in the Riyadh section of Khartoum, Sudan heavily populated by Saudis.

41.     Osama bin Laden was able to establish a powerful military and political presence in Sudan in the early 1990s, using a variety of business ventures to finance his activities, aided and abetted by certain Defendants named herein.

42.     Osama bin Laden forged business alliances during the early 1990s with wealthy Sudanese, both intimately involved with the Sudanese government.  Osama bin Laden invested with senior members of the NIF in the al-Shamal Islamic Bank.  Along with other senior members of the NIF, he founded Wadi-al-Aqiq, a trading company that was allowed by the

8

Sudanese government to engage in unrestricted shipping.  Osama bin Laden also founded Taba

Investments Ltd., an organization that secured a near monopoly over Sudan's major agricultural

exports.  Other enterprises begun by Osama bin Laden include Ladin International Company and

al-Hijra Construction.  Gum Arabic Company Ltd. was owned jointly by Osama bin Laden and

the Sudanese government.  Osama bin Laden held an interest in al Themar, a Sudanese

agricultural company, which employed 4,000 employees working its one-million-acre al-

Damazine farms.  Osama bin Laden also held an interest in the Blessed Fruits Company and al-

Ikhlas, both involved in the production of honey, fruits and vegetables.

43.     During the early 1990s while Osama bin Laden was in Sudan, al Qaeda grew into

a sophisticated organization.  It could not have done this without the support of the Sudanese

government.  Several key figures in the organization portrayed al Qaeda at the time as a

multinational corporation complete with a finance committee, investments and well- organized,

concealed accounts and operations worldwide.

44.     Osama bin Laden organized al Qaeda into camps dedicated to export of terrorism

throughout Sudan, the main one being a 20 acre site near Soba, 10 kilometers south of

Khartoum.  Osama bin Laden and al Qaeda were allowed to operate freely in Sudan.  Al Qaeda

purchased communications equipment, radios, and rifles for the Sudanese NIF, while the

Sudanese government in exchange provided 200 passports to al Qaeda so that terrorists could

travel with new identities.

45.     In or about the early 1990s, Jamal al-Fadl went to Hilat Koko, a suburb of

Khartoum, where he met with representatives of al Qaeda and the Sudanese army to discuss the

joint manufacture of chemical weapons.  Al Qaeda and the Sudanese army cooperated in efforts

to mount chemical agents on artillery shells.  Al Qaeda at this time also began to experiment with

biological warfare injecting or gassing dogs with cyanide.

46.     In Sudan, between the years of 1990 and 1993, members of al Qaeda undertook

the task of wiring the *Encyclopedia of the Afghan Jihad.*  Al Qaeda wrote another terrorist work

entitled *Military Studies in the Jihad against the Tyrants.*

47.     At various times between in or about 1992 and 1996, Osama bin Laden and

Mamdouh Mahamud Salim worked together with a ranking official in the NIF to obtain

communications equipment on behalf of the Sudanese intelligence service.

48.     On or at least two occasions in the period from in or about 1992 until 1995,

members of al Qaeda transported weapons and explosives from Khartoum to the coastal city of

Port Sudan for trans-shipment to the Saudi Arabian peninsula, using vehicles associated with

Osama bin Laden's "business."

49.     In 1993, al Qaeda paid $210,000.00 for an airplane in Tucson, Arizona, that was

then flown to Khartoum, Sudan.  This plane was intended to transport American Stinger Anti-

Aircraft missiles from Pakistan to Sudan, although that missile transport did not take place.

50.     Osama bin Laden stated publicly that one of his proudest achievements during the

period of time al Qaeda was based in Sudan was al Qaeda's role in the 1993 killing of more than

a dozen American soldiers stationed in Somalia.  Al Qaeda and its allies launched operations in

Somalia, to foment, and participated in, attack on British and American forces taking part in

Operations Restore Hope in Somalia.

51.     In 1995, Hassan al-Turabi organized an Islamic Peoples Congress where Osama

bin Laden was able to meet with militant groups from Pakistan, Algeria and Tunisia, as well as

Palestinian Islamic Jihad and HAMAS.  During the time that al Qaeda was based in Sudan, it forged alliances with Egyptian Islamic Groups and other Jihad Groups.

52.     Hassan al-Turabi, under pressure from the United States and others, expelled Osama bin Laden from the Sudan in 1996 but allowed him to move to Afghanistan.

53.     Because of Sudan's active support for al Qaeda and Osama bin Laden, the United States Department of State first put Sudan on the list of state sponsors of terrorism in 1993.  The Sudan continues to be one of the governments that the United States has designated as a state sponsor of international terrorism.

54.     Sudan serves as a safe-haven for members of al Qaeda, the Lebanese Hezbollah, al-Gama'a al- Islamiyya, Egyptian Islamic Jihad, the Palestine Islamic Jihad, and HAMAS. Sudan still has not complied fully with United Nations Security Council Resolutions 1044, 1054, and 1070, passed in 1996, which require that Sudan end all material support to terrorists.

55.     As described above, the Sudan acted through its officials, officers, agents, employees, agencies and instrumentalities in providing material support and resources to al Qaeda and Osama bin Laden.  The support provided by the Sudan and its agencies and instrumentalities to Osama bin Laden and al Qaeda assisted in and contributed to the preparation and execution of the plans that culminated in the September 11th Attacks and the extrajudicial killing of the Decedents.

## CLASS ACTION ALLEGATIONS

56.     <u>Class Definition</u>:  The Class Representatives, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and all others similarly situated, as members of a proposed Class defined as follows:

> The following persons shall be members of the Class: (1) all spouses, children, parents, or siblings of any individual who died at the World Trade Center in New York, NY, the Pentagon Building

in Arlington County, Virginia or in the airliner crash in Shanksville, Pennsylvania as the result of terrorist attacks on September 11, 2001; and (2) all legal representatives (including executors, estate administrators and trustees) entitled to bring legal action on behalf of any individual who died as the result of terrorist attacks on September 11, 2001; but excluding (3) all individuals, and all spouses, children, parents, siblings, and legal representative of individuals, identified by the Attorney General of the United States or otherwise shown to have perpetrated, aided and abetted, conspired in regard to or otherwise supported the terrorist attacks of September 11, 2001.

57.    <u>Numerosity</u>:  The members of the Class are so numerous that their individual joinder would be impracticable in that:

(i)     The Class includes the legal representatives and families of over 3,000 people murdered by defendants in the September 11, 2001 attacks in New York, Virginia and Pennsylvania;

(ii)    It would be highly impractical and a waste of judicial resources for each of those approximately 2,977 Decedents and their related Class members to be individually represented in separate actions or a single action; and

(iii)   Each of the putative Class members seek to recover damages based upon the common and coordinated conduct of the Defendants.

58.    <u>Commonality of Factual and Legal Questions</u>:  Common questions of law and fact exist as to all members of the Class.  These common legal and factual questions include, but are not limited to, the following:

(i)     Whether damages alleged by the Class were proximately caused by the conduct of the Defendants;

(ii)    Whether the Defendants are liable to the Class for damages pursuant to 28 U.S.C. § 1605A, the Anti-Terrorism Act or under common law agency principles;

12

(iii)     Whether Defendants are liable to the Class for punitive damages;

(iv)     What is the proper method for calculating damages for members of the Class;

(v)     Whether members of the Class can gain access to those assets of Defendants that have been frozen by the United States Department of Treasury in order to satisfy a judgment; and

(vi)     Whether members of the Class can gain access to those assets of Defendants that have been frozen by foreign states in order to satisfy a judgment.

59.     <u>Typicality</u>:  The claims of the Class Representatives are typical of the claims of all members of the Class in that:

(i)     The Class Representatives and all other Class members suffered damages as the result of common conduct and acts of the Defendants;

(ii)     Defendants used identical instruments, methods, and plans to inflict harm upon the Class Representatives and all other Class members;

(iii)     The method used to compute compensatory damages will be identical for the Class Representatives and all other members of the Class; and

(iv)     Punitive damages should be awarded against the Defendants for singular acts that impacted the Class Representatives and all other Class members.

60.     <u>Adequacy of Class Representatives</u>:  The Class Representatives are adequate representatives of the Class in that:

(i)     The Class Representatives and all other Class members have a unity in interest in bringing this action against the Defendants;

(ii)     The Class Representatives have made provision for adequate financial

resources to be available for the conduct of this litigation in order to

ensure that the interests of the Class will not be harmed; and

(iii)    Members of the Class will be adequately represented by the Class

Representatives and their Counsel who are experienced in class action

litigation.

61.     <u>Predominance of Common Issues and Efficiency of Class Treatment</u>:  The

common issues of fact and law enumerated above predominate over any individual factual or

legal issues, and a Class Action is a superior method for the fair and efficient adjudication of

those issues in that:

(i)      Individualized litigation presents a potential for inconsistent or

contradictory judgments and increases the burden and expense to all

parties and to the court system;

(ii)     By contrast, the class action device presents far fewer management

difficulties and provides the benefits of a single adjudication, economies

of scale, and comprehensive supervision by a single court; and,

(iii)    The claims of the Class Representatives and each Class member as set

forth above shall be governed by either federal law or substantially

identical state law.

WHEREFORE, Plaintiffs request that this Honorable Court certify this matter as a Class

Action and award Plaintiffs and the Class damages on each of the causes of action stated herein

plus interest, costs, and such other monetary and equitable relief as this Honorable Court deems

appropriate to prevent the Defendants from ever again committing the terrorist acts of September 11, 2001, or similar acts.

## COUNT XIV

### CLAIMS AGAINST ALL DEFENDANTS UNDER § 1605A
### OF THE FOREIGN SOVEREIGN IMMUNITIES ACT 28 U.S.C. § 1605A

62.     Plaintiffs incorporate all previous allegations by reference.

63.     At all relevant times, the Named Defendants were and remain a foreign state designated as a state sponsor of terrorism as required by 28 U.S.C. § 1605A(a)(2)(A)(i)(I) to maintain an action under § 1605A of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A(a)(2)(A)(i)(I).

64.     The conduct of the al Qaeda hijackers constituted acts of extrajudicial killing, torture, aircraft sabotage, and hostage taking within the meaning of FSIA § 1605A(a)(1).

65.     The Named Defendants provided material support and resources to al Qaeda in furtherance of those acts of the al Qaeda hijackers.

66.     At all relevant times, al Qaeda and the hijackers were agents of the Named Defendants acting within the scope of their agency.

67.     The conduct of the Named Defendants violated the provisions of the FSIA, in particular 28 U.S.C. § 1605A, and Plaintiffs suffered damages as a result of that violation.

68.     Plaintiffs, as estate representatives and immediate family members of 9/11 decedents, are entitled to recover damages from the Named Defendants under the provisions of the FSIA.

69.     The injuries and damages suffered by the Plaintiffs by virtue of the death the 9/11 Decedents, and the consequences resulting there from, were proximately caused by the intentional and reckless acts of the Named Defendants as described herein.

15

70.     As a direct and proximate result of the deaths of the 9/11 Decedents, Plaintiffs have been deprived of future aid, assistance, services, comfort, and financial support.

71.     As a direct and proximate result of the Named Defendants' cowardly, barbaric and outrageous acts of murder, Plaintiffs will forever grieve the deaths of the 9/11 Decedents.

72.     As a further result of intentional and reckless acts of the Named Defendants, Plaintiffs have been caused to expend various sums to administer the Estates of the 9/11 Decedents and have incurred other expenses for which they are entitled to recover.

73.     As a result of the Name Defendants' murderous conduct, Plaintiffs suffered damages including pain and suffering, trauma, emotional distress, loss of life and life's pleasures, loss of earnings and earning capacity, loss of accretion to their estates and other items of damages as fully set forth in the paragraphs above which are incorporated herein by reference.

74.     As a result of the intentional, reckless and negligent acts of the Named Defendants as described above, Plaintiffs were placed in apprehension of harmful and offensive bodily contact (assault), suffered offensive and harmful bodily contact (battery), suffered extreme fear, anxiety, emotional and psychological distress (intentional/negligent infliction of emotional distress), and were mentally and physically harmed, trapped, and falsely imprisoned (false imprisonment) prior to their deaths.

75.     The actions of the Named Defendants, acting in concert to carry out their unlawful objectives, were malicious, outrageous and in willful, wanton, and reckless disregard of the rights of the 9/11 Decedents and Plaintiffs. The Named Defendants, acting individually and jointly, intended to carry out actions that would end the lives of the Decedents.

76.     Plaintiffs are entitled to solatium and other damages, as stated in § 1605A(c)(4) of the FSIA, 28 U.S.C. § 1605A(c)(4).

77.     As a result of their intentional, malicious, outrageous, willful and wanton conduct, all Defendants are jointly and severally liable to all Plaintiffs for punitive damages.

WHEREFORE, Plaintiffs demand judgment against the Named Defendants for an amount authorized by governing law to be determined at trial, together with treble damages, punitive damages, pre- and post-judgment interest, attorney's fees, costs of this action and such other and further relief as the Court may deem appropriate under the circumstances.

## COUNT XV

### AIDING AND ABETTING AND CONSPIRING WITH AL QAEDA TO COMMIT THE SEPTEMBER 11th ATTACKS UPON THE UNITED STATES IN VIOLATION OF 18 U.S.C. § 2333(d) (JASTA)

78.     Plaintiffs incorporate all previous allegations by reference.

79.     As set forth above, the Named Defendants knowingly provided material support, resources, and substantial assistance to, and conspired with, al Qaeda over many years, with an awareness and intent to further al Qaeda's campaign to carry out terrorist attacks against the United States and its citizens on September 11, 2001.

80.     As set forth above, Plaintiffs' claims against the Named Defendants relating to their tortious acts in support of al Qaeda fall within the exception to foreign sovereign immunity set forth at 28 U.S.C. § 1605B, and Plaintiffs are thus authorized to assert causes of action against the Named Defendants pursuant to the Anti-Terrorism Act, 18 U.S.C. § 2331 et seq.

81.     Through the tortious acts in support of al Qaeda described above, the Named Defendants aided and abetted, and conspired with, al Qaeda to carry out acts of international terrorism against the United States and its citizens on September 11, 2001, in violation of 18 U.S.C. § 2333(d).

17

82.     At the time of the September 11th attacks, al Qaeda was a designated foreign terrorist organization under section 219 of the Immigration and Nationality Act (8 U.S.C. § 1189).

83.     The funding and other material support the Named Defendants provided to al Qaeda, as described above, enabled al Qaeda to acquire the global strike capabilities employed on September 11, 2001, and was essential to al Qaeda's ability to carry out the attacks.

84.     During the decade preceding the September 11th attacks, al Qaeda repeatedly made clear, through both declarations and actions, its intent to use funds and resources provided to it to conduct large scale terrorist attacks in order to kill innocent civilians, destroy property on a mass scale, and cause catastrophic economic harm.

85.     The September 11th attacks were a direct and foreseeable result of the material support and sponsorship of al Qaeda by the Named Defendants.

86.     Plaintiffs suffered injuries to their persons, property or businesses by reason of the September 11th attacks and defendant's tortious acts in support of al Qaeda.

WHEREFORE, Plaintiffs demand judgment against the Named Defendants for an amount authorized by governing law to be determined at trial, together with treble damages, punitive damages, pre- and post-judgment interest, attorney's fees, costs of this action and such other and further relief as the Court may deem appropriate under the circumstances.

## COUNT XVI

### AIDING AND ABETTING AND CONSPIRING WITH AL QAEDA TO COMMIT THE SEPTEMBER 11TH ATTACKS UPON THE UNITED STATES IN VIOLATION OF 18 U.S.C. § 2333(a)

87.     Plaintiffs incorporate all previous allegations by reference.

88.     As enacted in 1992, the express civil cause of action established under 18 U.S.C. § 2333(a) authorized claims for aiding and abetting and conspiring to commit an act of international terrorism.

89.     Through the tortious acts in support of al Qaeda described above, the Named Defendants aided and abetted, and conspired with, al Qaeda to carry out acts of international terrorism against the United States and its citizens on September 11, 2001, in violation of 18 U.S.C. § 2333(a).

90.     The relentless campaign by al Qaeda and its material supporters to carry out terrorist attacks against the United States and its citizens, which culminated in the September 11th attacks, involved continuous acts of violence and acts dangerous to human life, that violate the criminal laws of the United States, including the prohibitions set forth in 18 U.S.C. § 2332. *See* 18 U.S.C. § 2332b(a) (prohibiting conduct transcending national boundaries: killing or attempting to kill persons within the United States; causing serious bodily injury or attempting to cause serious bodily injury to persons within the United States; destroying or damaging any structure, conveyance, or other real or personal property within the United States; or attempting or conspiring to destroy any or damage any structure conveyance, or other real or personal property within the United States).

91.     Plaintiffs suffered injuries to their persons by reason of acts committed by al Qaeda that involved the murder and attempted murder of persons within the United States, and the mass destruction of real and personal property within the United States, in violation of the criminal laws of the United States, including the prohibitions set forth in 18 U.S.C. § 2332.

92.     Through the tortious acts in support of al Qaeda described above, the Named Defendants aided and abetted, and conspired with, al Qaeda to carry out acts of international

19

terrorism against the United States and its citizens on September 11, 2001, in violation of 18 U.S.C. §§ 2332(a), 2332(b), 2332(c), and 2333.

93.    The Named Defendants knew at all times that they were providing material support for al Qaeda's campaign to carry out acts of international terrorism against the United States and its citizens, and were aware and intended that the resources they provided would substantially assist al Qaeda in that objective.

94.    The Named Defendants also agreed to combine and conspire with al Qaeda and other persons to act unlawfully, in the manners set forth in this Complaint, and committed overt acts in furtherance of the conspiracy. At all relevant times, the Named Defendants knew of the conspiracy and of the roles of the al Qaeda elements it was supporting in furtherance of the conspiracy.

95.    By aiding and abetting violations of 18 U.S.C. § 2332 that have caused injuries to Plaintiffs, the Named Defendants are liable pursuant to 18 U.S.C. § 2333 for any and all damages that Plaintiffs have sustained as a result of such injuries.

96.    By conspiring to act with al Qaeda and other components of that terrorist organization's financial, logistical, and operational infrastructures, in furtherance of their campaign to conduct terrorist attacks against the United States and its citizens, in violation of 18 U.S.C. § 2332, the Named Defendants are liable pursuant to 18 U.S.C. § 2333 for any and all damages that Plaintiffs have sustained by reason of the September 11th attacks.

97.    The September 11th attacks were a direct and foreseeable result of the material support and sponsorship of al Qaeda by the Named Defendants.

WHEREFORE, Plaintiffs demand judgment against the Named Defendants for an amount authorized by governing law to be determined at trial, together with treble damages,

20

punitive damages, pre- and post-judgment interest, attorney's fees, costs of this action and such

other and further relief as the Court may deem appropriate under the circumstances.

## COUNT XVII

### COMMITTING ACTS OF INTERNATIONAL TERRORISM IN VIOLATION OF 18 U.S.C. § 2333

98.     Plaintiffs incorporate all previous allegations by reference.

99.     The actions of the Named Defendants in providing funding and other forms of

material support to al Qaeda and its agents would constitute "a criminal violation if committed

within the jurisdiction of the United States or of any State" and "appear to be intended to

intimidate or coerce a civilian population ... to influence the policy of a government by

intimidation or coercion or to affect the conduct of a government by mass destruction" within the

meaning of 18 U.S.C. § 2331.

100.    The actions of the Named Defendants in providing funding and other forms of

material support to al Qaeda and its agents, and in providing substantial assistance to al Qaeda

and its agents in planning, coordinating and carrying out the September 11th attacks in violation

of 18 U.S.C. § 2333, caused injuries to the persons, businesses, or property of Plaintiffs.

101.    By participating in the commission of violations of 18 U.S.C. § 2339A and 18

U.S.C. § 2339B that have caused Plaintiffs to be injured in their persons, the Named Defendants

have engaged in acts of international terrorism and are liable pursuant to 18 U.S.C. § 2333 for

any and all damages that Plaintiffs have sustained as a result of such injuries.

102.    By virtue of their willful violations of 18 U.S.C. § 2339C, which proximately

caused the injuries suffered by Plaintiffs, the Named Defendants committed acts of international

terrorism and are liable pursuant to 18 U.S.C. § 2333 for any and all damages that Plaintiffs have

sustained as a result of such injuries.

21

103.     The actions of the Named Defendants in providing funding and other forms of material support to al Qaeda and its agents were dangerous to human life, by their nature and as evidenced by their consequences.

104.     The actions of the Named Defendants in providing funding and other forms of material support to al Qaeda and its agents either occurred outside the territorial jurisdiction of the United States or transcended national boundaries in terms of the means by which they were accomplished.

105.     Accordingly, the actions of the Named Defendants in providing funding and other forms of material support to al Qaeda and its agents constitute acts of international terrorism as defined by 18 U.S.C. §§ 2331 and 2333 and through incorporation of 18 U.S.C. §§ 2339A, 2339B, and 2339C.

106.     As set forth above, but for the assistance provided by the Named Defendants, al Qaeda could not have successfully planned, coordinated, and carried out the September 11th Attacks, which were a foreseeable and intended result of the Named Defendants' material support and sponsorship of al Qaeda.

107.     For the reasons set forth above, the Named Defendants are liable pursuant to 18 U.S.C. § 2333 for any and all damages that Plaintiffs have suffered to their persons, businesses or property as a result of the September 11th attacks.

WHEREFORE, Plaintiffs demand judgment against the Named Defendants for an amount authorized by governing law to be determined at trial, together with treble damages, punitive damages, pre- and post-judgment interest, attorney's fees, costs of this action and such other and further relief as the Court may deem appropriate under the circumstances.

## COUNT XVIII

### LIABILITY PURSUANT TO RESTATEMENT (SECOND) OF TORTS § 317 AND RESTATEMENT (THIRD) OF AGENCY § 7.05: SUPERVISING EMPLOYEES AND AGENTS

108.    Plaintiffs incorporate all previous allegations by reference.

109.    The Named Defendants were negligent and/or reckless in their supervision of their agents or employees, in that the Named Defendants knew of these employees' and agents' propensity for the conduct that caused injury to Plaintiffs prior to the injuries' occurrence, and the Named Defendants failed to exercise due care in supervising their employees and agents.

110.    The ability of the Named Defendants' agents or employees to provide wide-ranging material support to al Qaeda, Osama bin Laden, and the September 11th hijackers, referenced above, and the resulting injuries to Plaintiffs, were caused by reason of the negligent and/or reckless supervision by the Named Defendants of their agents or employees.

111.    Due to the negligent and/or reckless supervision on the part of the Named Defendants, Plaintiffs sustained injuries.

112.    The injuries sustained by Plaintiffs, as a result of the negligence and/or recklessness of the Named Defendants, were foreseeable and the Named Defendants knew or should have known of the risk of injury to the Plaintiffs.

113.    The torts committed by the employees and agents of the Named Defendants were committed, among other places, on the premises of the Named Defendants or with the chattels of the Named Defendants, as their employees and agents provided wide-ranging material support to al Qaeda and the September 11th hijackers from, among other places, facilities owned and operated by the Named Defendants using money and resources of the Named Defendants.

WHEREFORE, Plaintiffs demand judgment against the Named Defendants for an amount authorized by governing law to be determined at trial, together with punitive damages,

23

pre- and post-judgment interest, and such other and further relief as the Court may deem appropriate under the circumstances.

## COUNT XIX

### LIABILITY PURSUANT TO RESTATEMENT (SECOND) OF TORTS § 317 AND RESTATEMENT (THIRD) OF AGENCY § 7.05: HIRING, SELECTING, AND RETAINING EMPLOYEES  AND AGENTS

114.    Plaintiffs incorporate all previous allegations by reference.

115.    The Named Defendants were negligent and/or reckless in hiring, selecting, and retaining its employees and agents, in that the Named Defendants knew of these employees' and agents' propensity for the conduct that caused injury to Plaintiffs prior to the injuries' occurrence.

116.    The Named Defendants hired, selected, and retained agents and employees and placed them in a situation where they could create an unreasonable risk of harm to others.

117.    The ability of the Named Defendants' agents and employees to provide wide-ranging material support to al Qaeda and the September 11th hijackers and the resulting injuries to Plaintiffs, were caused by reason of the negligent and/or reckless hiring, selecting, and/or retention by the Named Defendants.

118.    The injuries sustained by Plaintiffs, as a result of the negligence and/or recklessness of the Named Defendants, were foreseeable and the Named Defendants knew or should have known of the risk of injury to the Plaintiffs.

119.    The torts committed by employees and agents of the Named Defendants were committed, among other places, on the premises of the Named Defendants or with the chattels of the Named Defendants, as employees and agents provided wide-ranging material support to al Qaeda and the September 11th hijackers from, among other places, facilities owned and operated by the Named Defendants using money and resources of the Named Defendants.

24

WHEREFORE, Plaintiffs demand judgment against the Named Defendants for an amount authorized by governing law to be determined at trial, together with punitive damages, pre- and post-judgment interest, and such other and further relief as the Court may deem appropriate under the circumstances.

Dated:    December 21, 2018

Respectfully submitted,

ANDERSON KILL P.C.

/s/ Jerry S. Goldman
Jerry S. Goldman, Esq.
Bruce Strong, Esq.
1251 Avenue of the Americas
New York, NY  10020
Telephone:  212-278-1000
jgoldman@andersonkill.com

25

## DEMAND FOR JURY TRIAL

A trial by jury against all Defendants is demanded.

Dated:     December  21, 2018

Respectfully submitted,

ANDERSON KILL P.C.

/s/ Jerry S. Goldman
_____

Jerry S. Goldman, Esq.
Bruce Strong, Esq.
1251 Avenue of the Americas
New York, NY  10020
Telephone:  212-278-1000
jgoldman@andersonkill.com
*Attorneys for Plaintiffs*

26