23-1319(L)
*In re: Terrorist Attacks on September 11, 2001*

03-md-1570; 02-cv-6977; 03-cv-6978; 03-cv-9849; 04-cv-1922; 04-cv-5970; 18-cv-12114; 20-cv-07733; 20-cv-10615; 20-cv-10657; 20-cv-10720

# In the
# United States Court of Appeals
# For the Second Circuit

————

AUGUST TERM 2023

ARGUED: APRIL 9, 2024
DECIDED: SEPTEMBER 3, 2024

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Sep 24 2024

Nos. 23-1319(L), 23-1251, 23-1294, 23-1298, 23-1299, 23-1300, 23-1301, 23-1308, 23-1318, 23-1342, 23-7261.

## IN RE: TERRORIST ATTACKS ON SEPTEMBER 11, 2001*

————

Appeal from the United States District Court
for the Southern District of New York.

————

Before: WALKER, MENASHI, *Circuit Judges*, and MERCHANT, *District Judge*.†

This case concerns an aspect of one exception, among others, to the sovereign immunity generally granted to foreign states under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.* Specifically, the FSIA's state-sponsored terrorism exception under § 1605A waives immunity and grants subject-matter jurisdiction in

---

* The Clerk of Court is respectfully directed to amend the official caption in this case to conform with the caption above.

† Judge Orelia E. Merchant, of the United States District Court for the Eastern District of New York, sitting by designation.

cases concerning a foreign state's alleged commission or sponsorship of an act of terrorism, *see id.* § 1605A(a), provides a private right of action against foreign states, *see id.* § 1605A(c), and, relevant here, limits appeals in actions brought under the section, *see id.* § 1605A(f) (the "appellate bar"). Invoking this last provision, the plaintiffs in this multidistrict litigation, who are individuals and entities harmed as a result of the September 11, 2001 terrorist attacks, move to dismiss an appeal by the defendant, the Republic of the Sudan, for lack of appellate jurisdiction.

As pertinent here, Plaintiffs brought claims against Sudan under § 1605A for providing material support to the terrorist organization al Qaeda in the years leading up to the September 11 attacks. Sudan moved to dismiss Plaintiffs' actions, asserting foreign sovereign immunity under the FSIA. In a single order entered in several related actions, the district court denied Sudan's motion.

The district court concluded that Sudan lacked immunity under two terrorism-related exceptions to the FSIA: (1) § 1605A, including its repealed predecessor statute, § 1605(a)(7); and (2) § 1605B. Sudan filed a notice of appeal from the district court's order, seeking interlocutory review of the district court's denial of immunity under § 1605B and § 1605(a)(7) but not its denial under § 1605A.

Sudan contends that we have jurisdiction over its appeal pursuant to the collateral-order doctrine, which ordinarily permits immediate appeals from denials of immunity under the FSIA. *See Rogers v. Petroleo Brasileiro, S.A.*, 673 F.3d 131, 136 (2d Cir. 2012). Notwithstanding this doctrine, Plaintiffs argue that we lack appellate jurisdiction here because of § 1605A(f)'s appellate bar. Subsection 1605A(f) provides that "[i]n an action brought under

[§ 1605A], appeals from orders not conclusively ending the litigation may only be taken" if the district court has certified the order for immediate appeal pursuant to 28 U.S.C. § 1292(b). The district court did not do so here.

This case thus presents the question whether § 1605A(f) bars a foreign state from bringing an appeal under the collateral-order doctrine without § 1292(b) certification, where the appeal is limited to rulings on FSIA exceptions other than § 1605A. We hold that § 1605A(f) eliminates all interlocutory appeals under the collateral-order doctrine from orders falling within its scope, including Sudan's proposed appeal.

———————

SEAN P. CARTER, Cozen O'Connor, Philadelphia, PA, *for Plaintiffs–Appellees–Cross-Appellants Federal Insurance Company et al*.

CHRISTOPHER M. CURRAN, White & Case LLP, Washington, DC, *for Defendant–Appellant–Cross-Appellee Republic of the Sudan*.

———————

JOHN M. WALKER, JR., *Circuit Judge*:

This case concerns an aspect of one exception, among others, to the sovereign immunity generally granted to foreign states under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.* Specifically, the FSIA's state-sponsored terrorism exception under § 1605A waives immunity and grants subject-matter jurisdiction in cases concerning a foreign state's alleged commission or sponsorship

of an act of terrorism, *see id.* § 1605A(a), provides a private right of action against foreign states, *see id.* § 1605A(c), and, relevant here, limits appeals in actions brought under the section, *see id.* § 1605A(f) (the "appellate bar"). Invoking this last provision, the plaintiffs in this multidistrict litigation, who are individuals and entities harmed as a result of the September 11, 2001 terrorist attacks, move to dismiss an appeal by the defendant, the Republic of the Sudan, for lack of appellate jurisdiction.

As pertinent here, Plaintiffs brought claims against Sudan under § 1605A for providing material support to the terrorist organization al Qaeda in the years leading up to the September 11 attacks. Sudan moved to dismiss Plaintiffs' actions, asserting foreign sovereign immunity under the FSIA. In a single order entered in several related actions, the district court denied Sudan's motion.

The district court concluded that Sudan lacked immunity under two terrorism-related exceptions to the FSIA: (1) § 1605A, including its repealed predecessor statute, § 1605(a)(7); and (2) § 1605B. Sudan filed a notice of appeal from the district court's order, seeking interlocutory review of the district court's denial of immunity under § 1605B and § 1605(a)(7) but not its denial under § 1605A.

Sudan contends that we have jurisdiction over its appeal pursuant to the collateral-order doctrine, which ordinarily permits immediate appeals from denials of immunity under the FSIA. *See Rogers v. Petroleo Brasileiro, S.A.*, 673 F.3d 131, 136 (2d Cir. 2012). Notwithstanding this doctrine, Plaintiffs argue that we lack appellate jurisdiction here because of § 1605A(f)'s appellate bar. Subsection 1605A(f) provides that "[i]n an action brought under [§ 1605A], appeals from orders not conclusively ending the litigation may only

4

be taken" if the district court has certified the order for immediate appeal pursuant to 28 U.S.C. § 1292(b).  The district court did not do so here.

This case thus presents the question whether § 1605A(f) bars a foreign state from bringing an appeal under the collateral-order doctrine without § 1292(b) certification, where the appeal is limited to rulings on FSIA exceptions other than § 1605A.  We hold that § 1605A(f) eliminates all interlocutory appeals under the collateral-order doctrine from orders falling within its scope, including Sudan's proposed appeal.

## BACKGROUND

Between 2002 and 2004, five sets of plaintiffs filed suits against the Republic of the Sudan to recover damages for harms arising out of the September 11, 2001 terrorist attacks.[1]  Additional plaintiffs filed related suits in 2020.[2]  The plaintiffs in all suits (collectively, "Plaintiffs") are individuals killed or injured in the attacks, their families, and insurers who paid out claims for losses from the attacks.  Plaintiffs' actions have been consolidated for multidistrict litigation proceedings.  *See In re Terrorist Attacks on Sept. 11, 2001*, No. 03-md-

---

[1] These suits include *Ashton v. Al Qaeda Islamic*, No. 02-cv-6977 (S.D.N.Y. filed Sept. 4, 2002); *Burnett v. Al Baraka Inv. & Dev. Corp.*, No. 03-cv-9849 (S.D.N.Y. filed Dec. 11, 2003); *Fed. Ins. v. Al Qaida*, No. 03-cv-6978 (S.D.N.Y. filed Sept. 10, 2003); *Cont'l Cas. Co. v. Al Qaeda Islamic Army*, No. 04-cv-5970 (S.D.N.Y. filed Sept. 1, 2004); and *Est. of John P. O'Neill, Sr. v. Kingdom of Saudi Arabia*, No. 04-cv-1922 (S.D.N.Y. filed Mar. 10, 2004).

[2] These suits include *Aronow v. Republic of Sudan*, No. 20-cv-7733 (S.D.N.Y. filed Sept. 18, 2020); *Betru v. Republic of Sudan*, No. 20-cv-10615 (S.D.N.Y. filed Dec. 16, 2020); *Parker v. Republic of the Sudan*, No. 20-cv-10657 (S.D.N.Y. filed Dec. 17, 2020); and *Nolan v. Republic of the Sudan*, No. 20-cv-10720 (S.D.N.Y. filed Dec. 18, 2020).

1570 (S.D.N.Y. filed Dec. 10, 2003).

Initially, Sudan failed to participate in the district court proceedings, leading the Clerk of Court to enter several default judgments against it. In 2020, Sudan finally appeared in the litigation. The district court then vacated the default judgments and approved the filing of two new consolidated complaints—the *Ashton* Amended Complaint ("AAC") and the Consolidated Amended Complaint ("CAC")—covering the plaintiffs in the five original actions.[3] The district court also approved procedures whereby other plaintiffs could either file actions adopting the allegations of the AAC or the CAC or else conform existing complaints to one of these amended complaints. *See* Order, *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-md-1570, ECF No. 6547. As noted, additional plaintiffs then did so.[4]

In the AAC and the CAC, Plaintiffs allege that Sudan knowingly provided material support to al Qaeda beginning in the early 1990s, including by helping to raise funds for the terrorist organization, harboring its founder Osama Bin Laden, sponsoring terrorist training camps, and providing diplomatic cover to al Qaeda operatives. Without Sudan's support, Plaintiffs allege, al Qaeda would not have been capable of perpetrating the September 11 attacks. On that theory, Plaintiffs seek to hold Sudan liable for the mass destruction, injuries, and deaths that resulted from the attacks.

As relevant here, the AAC and the CAC assert claims against

---

[3] The *Ashton* Amended Complaint covers the plaintiffs in *Ashton v. Al Qaeda Islamic*, No. 02-cv-6977 (S.D.N.Y. filed Sept. 4, 2002). *See* Am. Compl., *In re Terrorist Attacks*, No. 03-md-1570, ECF No. 6537. The CAC covers the plaintiffs in the other four original actions. *See* Am. Compl., *id.*, ECF No. 6539.

[4] *See supra* note 2 and accompanying text.

Sudan pursuant to § 1605A's private right of action, § 1605A(c).[5]  The CAC additionally asserts claims pursuant to § 1605A's additional-damages provision, § 1605A(d), which authorizes related actions for property loss and loss claims under insurance policies.  In previous complaints, Plaintiffs had asserted claims under § 1605A's predecessor statute, § 1605(a)(7), which Congress repealed and replaced with the new § 1605A in 2008.  A decade later, in 2018, the plaintiffs in one of the five original actions became the first to assert § 1605A claims against Sudan in a supplemental complaint.  *See* Compl., *O'Neill v. Republic of the Sudan*, No. 18-cv-12114 (S.D.N.Y. filed Dec. 21, 2018), ECF No. 1.  A few years after that, all the original actions were consolidated in the AAC and the CAC.  Thus, all Plaintiffs are now asserting § 1605A claims against Sudan.

After Plaintiffs filed the AAC and the CAC, Sudan moved to dismiss their actions pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) for lack of subject-matter jurisdiction, lack of personal jurisdiction, and failure to state a claim, respectively.  As pertinent here, Sudan argued that subject-matter jurisdiction was lacking because it was immune from suit under the FSIA and no exception to foreign sovereign immunity applied.

In a Memorandum Decision and Order dated August 10, 2023, the district court adopted a magistrate judge's Report and Recommendation to deny Sudan's motion to dismiss.  First, the district court determined that it possessed subject-matter jurisdiction over Plaintiffs' actions under two FSIA exceptions: (1) the state-

---

[5] The complaints also assert claims under the Anti-Terrorism Act, 18 U.S.C. § 2331 *et seq.*; Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, 130 Stat. 852 (2016); Alien Tort Statute, 28 U.S.C. § 1350; Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*; international law, and state tort law.

sponsored terrorism exception, 28 U.S.C. § 1605A, including its repealed predecessor statute, § 1605(a)(7); and (2) the Justice Against Sponsors of Terrorism Act ("JASTA") exception, 28 U.S.C. § 1605B.[6] Second, the district court found that it had personal jurisdiction over Sudan. Third, the district court concluded that Plaintiffs had adequately pled most claims, including the § 1605A claims.

Sudan filed a notice of appeal from the August 10, 2023 order. In its Civil Appeal Pre-Argument Statement, Sudan indicates that it intends to challenge the district court's denial of immunity and exercise of subject-matter jurisdiction only under § 1605B and § 1605(a)(7), and not under § 1605A. Sudan asserts that we have jurisdiction over its appeal under the collateral-order doctrine, which "allows an immediate appeal from an order denying immunity under the FSIA." *Rogers*, 673 F.3d at 136 (quoting *Kensington Int'l Ltd. v. Itoua*, 505 F.3d 147, 153 (2d Cir. 2007)).[7]

## DISCUSSION

Plaintiffs now move to dismiss Sudan's appeal for lack of

---

[6] Section 1605B was enacted in 2016 specifically to allow 9/11 suits against foreign states that were not designated state sponsors of terrorism. *See* 162 Cong. Rec. S6167 (daily ed. Sept. 28, 2016) (statement of Sen. Richard Blumenthal). Section 1605B withdraws a foreign state's immunity "in any case in which money damages are sought against a foreign state for physical injury . . . or death occurring in the United States and caused by—(1) an act of international terrorism in the United States; and (2) a tortious act or acts of the foreign state . . . regardless where th[ose] tortious act[s] . . . occurred." 28 U.S.C. § 1605B(b).

[7] Sudan also claims that our jurisdiction over its appeal arises under 28 U.S.C. § 1291, which permits "appeals from all final decisions of the district courts." 28 U.S.C. § 1291. To the extent that Sudan argues that § 1291 provides a separate basis for appellate jurisdiction independent of the collateral-order doctrine, we reject that argument. *See infra* Part I.

appellate jurisdiction.  Plaintiffs argue that § 1605A(f) of the FSIA—
which imposes limitations on appeals in certain FSIA cases—bars us
from hearing Sudan's appeal.  Resolving Plaintiffs' motion thus
requires us to examine the interplay between § 1605A(f)'s appellate
bar and the collateral-order doctrine.

Subsection 1605A(f) provides that "[i]n an action brought
under [§ 1605A], appeals from orders not conclusively ending the
litigation may only be taken" if the district court has certified the
order for immediate appeal under 28 U.S.C. § 1292(b).  *See* 28 U.S.C.
§ 1605A(f); *id.* § 1292(b).  The district court did not do so here.  Even
so, Sudan argues that § 1605A(f) does not preclude it from invoking
the collateral-order doctrine to bring an appeal limited to the district
court's § 1605B and § 1605(a)(7) rulings.  Plaintiffs counter that
§ 1605A(f) eliminates all appeals under the collateral-order doctrine
in actions brought under § 1605A, whether or not other FSIA
exceptions are also applicable.

We think Plaintiffs have the better view.  Below, we discuss the
legal standards applicable to this motion and then turn to the merits
of the parties' arguments.  We conclude that § 1605A(f) requires
dismissal of Sudan's appeal.

## I.  Legal Standards

Our appellate jurisdiction is circumscribed by statute.  We
possess jurisdiction under 28 U.S.C. § 1291 to review a district court's
"final decisions," and under § 1292(b) to review interlocutory orders
that the district court has certified as appealable.  In § 1291's final-
judgment rule, "Congress has expressed a preference [against] having
litigation punctuated by 'piecemeal appellate review of trial court

decisions which do not terminate the litigation.'" *Fischer v. N. Y. State Dep't of L.*, 812 F.3d 268, 273 (2d Cir. 2016) (quoting *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 265 (1982)).

As a denial of a motion to dismiss, the district court's August 10, 2023 order did not "end[] the litigation on the merits" and would therefore not ordinarily be appealable as a "final decision" under § 1291. *In re Roman Cath. Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 35 (2d Cir. 2014) (per curiam) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978)). Nor is it an interlocutory order that has been certified as appealable. *See* 28 U.S.C. § 1292(b). For our purposes, that leaves only the collateral-order doctrine as a possible basis for our jurisdiction over Sudan's appeal. We review this doctrine and the FSIA's appellate bar in turn.

## A.    The Collateral-Order Doctrine

While sometimes described as an exception to § 1291's final-judgment rule, the collateral-order doctrine is instead "best understood . . . as a 'practical construction' of it." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (quoting *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994)). This doctrine permits our review of a "small class" of interlocutory rulings that do not end the litigation but are nevertheless "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* (first quoting *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996); and then quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)).

An appeal can proceed under the collateral-order doctrine if three requirements are met. The order appealed from must "[1]

conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Id.* (quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)). These requirements are stringent; "if any one [of them] is unsatisfied, the order is not immediately appealable under this doctrine." *Fischer*, 812 F.3d at 274.

A denial of foreign sovereign immunity under the FSIA "generally satisfies the conditions necessary to invoke the collateral order doctrine," *EM Ltd. v. Banco Central De La República Argentina*, 800 F.3d 78, 87 (2d Cir. 2015), and is therefore immediately appealable, *see Rogers*, 673 F.3d at 136.

## B.   The FSIA and the Appellate Bar Under § 1605A(f)

Notwithstanding the collateral-order doctrine's general applicability to FSIA cases, § 1605A(f)'s appellate bar restricts certain interlocutory appeals implicating § 1605A.

As previewed above, § 1605A is one of several statutory exceptions that withdraw the jurisdictional immunity generally conferred upon foreign states under the FSIA. *See* 28 U.S.C. §§ 1604, 1605A. In civil actions against foreign states, subject-matter jurisdiction "depends on the existence of one of the[se] specified exceptions to foreign sovereign immunity." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 435 (1989) (quoting *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493 (1983)).

Section 1605A, the FSIA's state-sponsored terrorism exception, withdraws a foreign state's immunity and confers subject-matter jurisdiction

> in any case not otherwise covered by this chapter in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.

28 U.S.C. § 1605A(a)(1); *see also id.* § 1605A(a)(2) (granting jurisdiction over claims under this section that meet certain specifications).  This exception may be invoked only against a foreign state that was designated as a "state sponsor of terrorism" by the State Department at the time that the terrorist act occurred or as a result of such act.  *Id.* § 1605A(a)(2)(A)(i)(I); *see also id.* § 1605A(h)(6) (defining the term "state sponsor of terrorism").

Enacted in 1996, the state-sponsored terrorism exception was originally codified at 28 U.S.C. § 1605(a)(7).  *See* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, § 221(a), 110 Stat. 1214, 1241–42.  Congress later amended and recodified the exception at 28 U.S.C. § 1605A as part of the National Defense Authorization Act for Fiscal Year 2008 ("NDAA"), Pub. L. 110–181, § 1083(a)(1), 122 Stat. 3, 338–41.

The NDAA amendments to the state-sponsored terrorism exception "clear[ed] away a number of legal obstacles, including adverse court rulings, that ha[d] stifled plaintiffs' efforts to obtain relief in civil actions against designated state sponsors of terrorism." *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 40 (D.D.C. 2009). For example, Congress expressly created a private right of action against foreign states for acts falling within the terrorism exception, *see* 28 U.S.C. § 1605A(c), in response to a court decision declining to find one under § 1605(a)(7), *see Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024, 1027 (D.C. Cir. 2004); *see also* 154 Cong. Rec. S54–55 (daily ed. Jan. 22, 2008) (statement of Sen. Frank Lautenberg) (criticizing *Cicippio-Puleo*). Particularly relevant to this case, the NDAA amendments also added § 1605A(f)'s appellate bar. *See Simon v. Republic of Iraq*, 529 F.3d 1187, 1190 (D.C. Cir. 2008) (noting that § 1605A is "more advantageous to plaintiffs" than § 1605(a)(7) because the later statute includes the appellate bar).

## II.    Analysis

Invoking § 1605A(f), Plaintiffs challenge our jurisdiction to consider Sudan's appeal. As noted, Sudan seeks to appeal from the district court's August 10, 2023 order denying Sudan's motion to dismiss on foreign sovereign immunity grounds. As a preliminary matter, Sudan disputes that its appeal, which it limited to the district court's denial of immunity under § 1605B and § 1605(a)(7), comes within the purview of § 1605A(f)'s appellate bar. And even if § 1605A(f) applies, Sudan argues that it may nevertheless bring its appeal under collateral-order doctrine.

We disagree with Sudan.  As set forth below, § 1605A(f) applies to Sudan's appeal and renders the collateral-order doctrine inapplicable as a jurisdictional basis for the appeal.

### A.    Section 1605A(f) applies to Sudan's appeal.

We first address whether the text of § 1605A(f) encompasses Sudan's appeal.  When interpreting a statute, we "necessarily begin[] with the plain meaning of a law's text and, absent ambiguity, will generally end there."  *Dobrova v. Holder*, 607 F.3d 297, 301 (2d Cir. 2010) (quoting *Bustamante v. Napolitano*, 582 F.3d 403, 406 (2d Cir. 2009)).  Subsection § 1605A(f) provides: "In an action brought under this section, appeals from orders not conclusively ending the litigation may only be taken pursuant to [certification under] section 1292(b) of this title."  28 U.S.C. § 1605A(f).

Because there was no such certification below, § 1605A(f)'s limitation on appellate review applies to Sudan's appeal if (1) the district court's August 10, 2023 order did not terminate Plaintiffs' actions against Sudan; and (2) those actions are "brought under" § 1605A.  *Id.*  We consider each issue in turn.

### 1.    The district court's order is a nonfinal "order."

First, § 1605A(f) applies to "orders not conclusively ending the litigation."  *Id.*  Absent any limiting language, we construe this phrase as referring to all nonfinal orders—that is, all interlocutory orders.  As noted, the district court's August 10, 2023 order denying Sudan's motion to dismiss did not "end[] the litigation on the merits."  *In re Roman Cath. Diocese*, 745 F.3d at 35 (quoting *Coopers*, 437 U.S. at 467).  It is thus plainly a nonfinal "order" within the meaning of § 1605A(f).

Sudan insists, however, that § 1605A(f) does not preclude our review of the entire order. Seeking to avoid § 1605A(f)'s strictures, Sudan emphasizes that its proposed appeal challenges the district court's rulings as to § 1605B and § 1605(a)(7) but not as to § 1605A. Sudan appears to argue that, even if § 1605A(f) precludes it from challenging the latter ruling, the statute poses no impediment to our review of the former rulings, which do not implicate § 1605A.

We disagree. Subsection 1605A(f) restricts our review of nonfinal "*orders*," rather than specific issues or rulings within those orders. 28 U.S.C. § 1605A(f) (emphasis added). As such, the whole of the district court's order—including the district court's rulings as to § 1605B and § 1605(a)(7)—is subject to § 1605A(f)'s limitation on appellate review. *Cf. BP P.L.C. v. Mayor & City Council of Balt.*, 141 S. Ct. 1532, 1537–38 (2021) ("Here, the relevant portion of [28 U.S.C.] § 1447(d) provides that 'an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal.' . . . From this it would seem to follow that, when a district court's removal order rejects all of the defendants' grounds for removal, § 1447(d) authorizes a court of appeals to review each and every one of them. After all, the statute allows courts of appeals to examine the whole of a district court's 'order,' not just some of its parts or pieces.").

### 2. Plaintiffs' actions are "brought under" § 1605A.

Second, § 1605A(f) operates in actions "brought under" § 1605A. 28 U.S.C. § 1605A(f). As we have explained in other statutory contexts, an action is "brought under" a statute when it is "established by or referenced in" that statute. *Vultaggio ex rel. Vultaggio v. Bd. of Educ.*, 343 F.3d 598, 602 (2d Cir. 2003) (per curiam).

As noted, the operative complaints in Plaintiffs' present actions—the AAC and CAC—assert claims against Sudan pursuant to § 1605A's private right of action, § 1605A(c), and to § 1605A's additional-damages provision, § 1605A(d). The district court found these claims to be sufficiently plausible to survive Sudan's motion to dismiss. This is enough to deem Plaintiffs' actions as being "brought under" § 1605A, such that § 1605A(f)'s appellate bar applies.

Sudan disputes that conclusion. It offers three principal arguments as to why Plaintiffs' actions are not "brought under" § 1605A and therefore beyond § 1605A(f)'s reach. None of its arguments is availing.

### a. We do not reach Sudan's timeliness challenge.

Sudan first argues that Plaintiffs' actions are not "brought under" § 1605A because their § 1605A claims are time-barred. Section 1605A contains a ten-year statute of limitations for claims brought under it, as did its repealed predecessor statute, § 1605(a)(7). *See* 28 U.S.C. § 1605A(b); *Owens v. Republic of Sudan*, 864 F.3d 751, 765 (D.C. Cir. 2017). "Notwithstanding the limitation period, the [2008] NDAA provided two means of bridging the gap between the now-repealed § 1605(a)(7) and the new § 1605A." *Owens*, 864 F.3d at 765; *see also* NDAA § 1083(c) (codified at 28 U.S.C. § 1605A note concerning "Effective Date"). First, § 1083(c)(2) of the NDAA authorized plaintiffs with pending § 1605(a)(7) actions to convert or refile their actions under § 1605A—and thereby to take advantage of § 1605A's explicit right of action against foreign states—within 60 days of the NDAA's enactment. *See* NDAA § 1083(c)(2) & (c)(2)(C)(ii). Second, § 1083(c)(3) established a separate mechanism that continues

16

to be used to bring "related actions" under § 1605A. *See id.*
§ 1083(c)(3) (capitalization omitted). It provides that "[i]f an action
arising out of an act or incident [was] timely commenced under
section 1605(a)(7)," then "any other action arising out of the same act
or incident may be brought under section 1605A" within 60 days of
the later of the "entry of judgment in the original action" or the
NDAA's enactment. *Id.*

As indicated above, Plaintiffs originally filed their actions
under § 1605(a)(7) shortly after the September 11, 2001 attacks, well
within the ten-year limitations period, but did not assert § 1605A
claims against Sudan until 2018 at the earliest. The district court
nevertheless deemed Plaintiffs' § 1605A claims timely under
§ 1083(c)(3). It determined that because no judgment had yet been
entered on Plaintiffs' original § 1605(a)(7) actions, § 1083(c)(3)
allowed Plaintiffs to bring their present actions under § 1605A as
"related actions" "arising out of the same act or incident" as the
original actions. *See* NDAA § 1083(c)(3). Sudan challenges that
determination, arguing that Plaintiffs cannot avail themselves of
§ 1083(c)(3) because that provision authorizes § 1605A actions only if
the related § 1605(a)(7) actions had reached judgment when the
NDAA was enacted, which was not the case here. Sudan thus reasons
that § 1083(c)(3) cannot render their § 1605A claims timely.

We do not reach Sudan's timeliness challenge now, however,
because it is premature. The district court's finding that Plaintiffs
timely brought § 1605A claims pursuant to § 1083(c)(3) was integral
to its holding that Plaintiffs' actions are cognizable under § 1605A.
Sudan's timeliness challenge impermissibly attacks that holding. In
other words, if Sudan is right that Plaintiffs' § 1605A claims are time-
barred, then the district court necessarily erred in holding that

17

§ 1605A provides a basis for subject-matter jurisdiction over Plaintiffs' actions.  However, § 1605A(f)'s appellate bar prohibits Sudan from attacking the merits of that interlocutory ruling absent § 1292(b) certification.  As a result, our resolution of Sudan's timeliness challenge must wait until after the entry of final judgment, should Sudan choose to pursue the challenge then.

This is not to say, however, that § 1605A(f) entirely precludes us from asking, at this stage of the litigation, whether Plaintiffs' actions are "brought under" § 1605A.  This inquiry necessarily informs our analysis as to whether § 1605A(f) bars Sudan's interlocutory appeal, given that § 1605(f)'s appellate bar operates only in actions "brought under" § 1605A.  But our inquiry is far less searching than that proposed by Sudan.  We do not independently consider whether Plaintiffs' § 1605A claims are timely.  Nor do we review the claims for plausibility.  Instead, we simply assure ourselves of the existence of § 1605A claims in Plaintiffs' actions and, having done so, defer to the district court as to their viability pending appeal from the final judgment.

### b. Section 1605A(f) does not distinguish between actions "brought" and actions "maintained" under § 1605A.

Sudan next contends that, even if Plaintiffs' § 1605A claims are timely, Plaintiffs' actions are not "brought" under § 1605A but simply "maintained" under that section.  In Sudan's view, § 1605A creates a distinction between, on the one hand, new actions "brought" under § 1605A, and, on the other, actions like Plaintiffs' that were first filed under § 1605(a)(7) and later "maintained" under § 1605A pursuant to § 1083(c)'s gap-bridging rules.  *See Owens*, 864 F.3d at 765.  Sudan cites

subsection (b) of § 1605A, which sets forth § 1605A's limitations period, as evidence of this distinction.  Subsection 1605A(b) provides that "[a]n action may be *brought or maintained* under this section if the action is commenced, or a related action was commenced under section 1605(a)(7)" within the ten-year limitations period.  *Id.* (emphasis added).  Sudan claims that § 1605A(b)'s distinction between "brought" and "maintained" extends to § 1605A(f), thus triggering § 1605A(f)'s appellate bar in actions "brought"—but not those "maintained"—under § 1605A.

Sudan's view is not tenable.  To start, Sudan reads too much into § 1605A(b)'s "brought or maintained" language.  It is true that, when used in reference to legal actions, the term "maintain" can mean "'to continue' to litigate, as opposed to 'commence' an action." *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 695 (2003) (quoting Black's Law Dictionary 1143 (3d ed. 1933)).  But "maintain" is also "often read as 'bring' or 'file.'"  *Id.* (quoting Black's Law Dictionary, *supra*, at 1143).  Given these contrasting meanings, we are reluctant to accord § 1605A(b)'s "brought or maintained" language the significance that Sudan urges.

Whatever the precise meaning of "brought" and "maintained" in § 1605A(b), we think that other language in § 1605A in fact supports the position that Plaintiffs' actions are "brought" under § 1605A.  Specifically, § 1083(c)(3) of the NDAA, which applies to actions that were previously filed under § 1605(a)(7), states only that related actions "may be *brought* under section 1605A," without mentioning that such actions may be maintained under it.[8]  *See*

---

[8] Sudan reads § 1083(c)(3) differently.  In its view, while § 1083(c)(3) allows plaintiffs to "bring" *new* related actions asserting § 1605A claims, it does not allow plaintiffs to assert § 1605A claims by filing amended complaints in existing

NDAA § 1083(c)(3) (emphasis added).  This is the very provision that Plaintiffs invoked to assert § 1605A claims in the AAC and the CAC.

Sudan points out that § 1083(c)(2) promises that an action converted under that provision will "be given effect as if the action had originally been filed under section 1605A(c)," NDAA § 1083(c)(2), but that § 1083(c)(3) does not carry the same guarantee.  Thus, Sudan argues, an action that was filed pursuant to § 1083(c)(3) is merely "maintained" under § 1605A and is not subject to 1605A(f)'s appellate bar.  We do not agree.  First, § 1083(c)(3) uses the term "brought under," while § 1083(c)(2) does not.  Second, § 1083(c)(2) permits a plaintiff to convert a § 1605(a)(7) action to a § 1605A action via motion, without refiling the action.  Perhaps for that reason, Congress included an express guarantee that an action converted this way would be given the same effect as an originally filed § 1605A action.  Such a reading accords with Congress's intent that plaintiffs with both new and previously filed actions against state sponsors of terrorism be able to avail themselves of the benefits of § 1605A, regardless of the procedure that § 1605(a)(7) plaintiffs used to convert their actions.  *See Van Beneden v. Al-Sanusi*, 709 F.3d 1165, 1167 n.4

---

actions, as some Plaintiffs here have done.  There are several problems with this reasoning.  For one, some Plaintiffs did, in fact, file new related actions asserting § 1605A claims.  *See* Compl., *O'Neill v. Republic of the Sudan*, No. 18-cv-12114 (S.D.N.Y. filed Dec. 21, 2018), ECF No. 1; *see also supra* notes 2 & 4 and accompanying text.  More importantly, as the magistrate judge here pointed out, this reasoning "would create unnecessary inefficiency by forcing plaintiffs to file entirely duplicative new cases whose sole difference is that they are brought under § 1605A rather than § 1605(a)(7)."  R. & R., *In re Terrorist Attacks*, No. 03-md-1570, ECF No. 7942, at 27.  Furthermore, it "would require accepting that [in § 1083(c)(3)], Congress created a provision whose only practical effect is to create unnecessary duplicative filings while extracting further filing fees from terror victims."  *Id.*  We thus reject Sudan's reading of § 1083(c)(3) as it pertains to that statute's relation to § 1605A(f)'s appellate bar.

(D.C. Cir. 2013) (noting that in replacing § 1605(a)(7) with § 1605A, "Congress sought to lighten the jurisdictional burdens borne by victims of terrorism seeking judicial redress, such as by ensuring that individuals barred from suit under § 1605(a)(7) would nevertheless be able to bring their claims").

Because the text and structure of other parts of § 1605A do not expressly distinguish between actions "brought" and those "maintained" under the section, we have no reason to think that Congress intended to create an *operative* distinction between such actions applicable throughout the section.  Thus, to the extent that § 1605A(b) itself may be read to distinguish between such actions, we decline to extend that distinction to § 1605A(f)'s appellate bar.

### c.    We do not reach Sudan's argument that § 1605A is a "standalone" FSIA exception.

Sudan finally argues that Plaintiffs' actions are not "brought under" § 1605A because the district court deemed the actions cognizable under other FSIA exceptions besides § 1605A, namely § 1605B and § 1605(a)(7).  In essence, Sudan argues that because § 1605A's immunity-stripping provision applies "in any case *not otherwise covered* by this chapter," 28 U.S.C. § 1605A(a)(1) (emphasis added), § 1605A is a "standalone" FSIA exception that operates only when no other FSIA exception could cover an action.  Plaintiffs counter that it would be incongruous to interpret § 1605A in this restrictive manner given that Congress enacted this section to augment, not eliminate, the remedies otherwise available to victims of terrorism.  *See, e.g.*, *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d at 58.

We will not weigh in on this issue now.  As with Sudan's timeliness challenge, its argument that § 1605A is a "standalone" exception is premature.  If we accepted this argument, we would be forced to label as error the district court's holding that Plaintiffs' actions, despite being "otherwise covered" by § 1605B and § 1605(a)(7), are nonetheless cognizable under § 1605A.  As we earlier explained, however, § 1605A(f) precludes us from reviewing the merits of this holding at this interlocutory stage.

\* \* \*

In sum, because the district court's August 10, 2023 order is a nonfinal "order" and Plaintiffs' actions are deemed to be "brought under" § 1605A, § 1605A(f)'s appellate bar applies to Sudan's appeal.

## B.  Section 1605A(f) renders the collateral-order doctrine inapplicable to Sudan's appeal.

Lastly, we address Sudan's arguments pertaining to the collateral-order doctrine.  Even if § 1605A(f) applies to Sudan's appeal—as we have now concluded—Sudan argues that the statute does not preclude it from appealing the district court's § 1605B and § 1605(a)(7) rulings by way of the collateral-order doctrine.  Plaintiffs respond that § 1605A(f) eliminates all interlocutory appeals from orders falling within its scope, including those brought pursuant to the collateral-order doctrine.[9]

---

[9] Plaintiffs further contend that even if § 1605A(f) did not bar Sudan from invoking the collateral-order doctrine, Sudan's appeal could not proceed because it fails to satisfy the first prong of the collateral-order doctrine.  Specifically, Plaintiffs argue that an appeal limited to the district court's rulings on § 1605B and § 1605(a)(7), and not § 1605A, would not "conclusively determine the disputed question" of Sudan's immunity under the FSIA.  *Will*, 546 U.S. at 349 (quoting *P.R. Aqueduct*,

The plain text of § 1605A(f) squarely resolves this issue in Plaintiffs' favor.  As the statute provides, an appeal from a nonfinal order in an action brought under § 1605A "may only be taken pursuant to section 1292(b) . . . ."  28 U.S.C. § 1605A(f).  We noted above that this limitation precludes our review of entire "*orders*," including rulings concerning FSIA exceptions other than § 1605A.  *See id.* (emphasis added); *see also BP P.L.C.*, 141 S. Ct. at 1537–38. Furthermore, this limitation is clear that the "only" avenue for appeal from orders subject to § 1605A(f) is through § 1292(b) certification. We thus conclude that, in the absence of such certification, § 1605A(f) renders the collateral-order doctrine inapplicable as a jurisdictional basis for interlocutory appeals from orders falling within § 1605A(f)'s ambit, including the district court's order here.  Simply put, a foreign state cannot rely on the collateral-order doctrine to bring an interlocutory appeal that § 1605A(f) would otherwise bar.

Although § 1605A(f)'s text is unambiguous, we note that the statute's legislative history reinforces our conclusion.  As discussed, Congress added § 1605A(f) as part of other amendments to the FSIA meant to grant victims of terrorism greater rights and remedies against state sponsors of terrorism.  *See In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d at 39–40.  As a sponsor of these amendments explained:

> [Section 1605A(f)] also addresses a part of the law which until now has granted foreign states an unusual procedural advantage.  As a general rule, interim court

---

506 U.S. at 144).  Sudan rejects that contention, arguing that the same jurisdictional analysis underlies all three FSIA exceptions.  Because we hold that § 1605A(f) *does* bar Sudan from invoking the collateral-order doctrine, we do not reach these arguments.

23

orders cannot be appealed until the court has reached a final disposition on the case as a whole. However, foreign states have abused a narrow exception to this bar on interim appeals—the collateral order doctrine—to delay justice for, and the resolution of, victim's suits. . . . My provision will eliminate the ability of state sponsors of terrorism to utilize the collateral order doctrine.

154 Cong. Rec. S55 (daily ed. Jan. 22, 2008) (statement of Sen. Frank Lautenberg). These statements erase any doubt that § 1605A(f) is intended to bar appeals under the collateral-order doctrine by state sponsors of terrorism.

Notwithstanding Congress's intent to the contrary, Sudan urges that § 1605A(f) cannot foreclose all interlocutory appeals under the collateral-order doctrine. To hold otherwise, Sudan warns, would frustrate the various policy considerations that underlie the usual rule permitting immediate appeals from denials of foreign sovereign immunity under the collateral-order doctrine.

Sudan observes that our general practice of affording foreign states the benefit of sovereign immunity "helps to induce each nation state, as a matter of international comity, to respect the independence and dignity of every other, including our own." *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 179 (2017) (internal quotation marks omitted and alteration incorporated). Furthermore, permitting immediate appeals from denials of immunity ensures that foreign states actually receive that benefit. *See Rein v. Socialist People's Libyan Arab Jamahiriya*, 162 F.3d 748, 756 (2d Cir. 1998) ("A sovereign that is required to litigate a case

24

on the merits before it can appeal the assertion of jurisdiction over it has not been afforded the benefit of the immunity to which it is entitled." (citing *P.R. Aqueduct*, 506 U.S. at 145)).

Although Sudan's observations are not without substance, we are not concerned that our holding today undermines the general principles to which Sudan refers. While the FSIA establishes a "baseline presumption" of immunity for foreign states, "the law also includes several exceptions." *Beierwaltes v. L'Office Federale De La Culture De La Confederation Suisse*, 999 F.3d 808, 818–19 (2d Cir. 2021). These exceptions encompass instances in which Congress has considered a foreign state's conduct either to be sufficiently non-governmental or, in the case of the state-sponsored terrorism exception, sufficiently reprehensible to warrant eliminating foreign sovereign immunity. *See O'Bryan v. Holy See*, 556 F.3d 361, 374 (6th Cir. 2009). Relevant here, Congress enacted the state-sponsored terrorism exception to "give American citizens an important . . . weapon against . . . outlaw states" that "consider terrorism a legitimate instrument of achieving their foreign policy goals." H.R. Rep. No. 104-383, at 62 (1995). And Congress's later amendments to the exception, including § 1605A(f)'s appellate bar, were "designed to deter future state-sponsored terrorism." 154 Cong. Rec. S54 (daily ed. Jan. 22, 2008) (statement of Sen. Frank Lautenberg). Implicit in that design is a congressional resolve that a foreign state that sponsors terrorist acts thereby forfeits the benefits of foreign sovereign immunity, one of which is the "ability . . . to utilize the collateral order doctrine." *Id.* at S55. Those foreign states that refrain from sponsoring terrorism need not be concerned about the loss of sovereign immunity and its attendant benefits.

25

23-1319(L)

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Plaintiffs' motion to dismiss Sudan's appeal is **GRANTED** and the appeal is **DISMISSED**, without prejudice to reinstatement within thirty days following the district court's entry of a final judgment pursuant to 28 U.S.C. § 1291.